UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | 21-MJ-1062-DLC<br><br>**Filed Under Seal** |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The Order would require AT&T Wireless, a cellular service provider headquartered at 11760 US Highway 1, Suite 600 North Palm Beach, FL 33408; Sprint, a cellular service provider headquartered at 6480 Sprint Pkwy, Overland Park, Kansas 66251; T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054; and Verizon Wireless, a cellular service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921 ("the Service Providers") to disclose certain records and other information pertaining to the cellular telephone towers described in Part I of Attachment A to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND

1.  The United States may use a court order issued under 18 U.S.C. § 2703(d) to require a provider of electronic communication service to disclose records or other information pertaining to a subscriber to or customer of such service, not including the contents of any communications. Cellular service providers are providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court order issued under 18 U.S.C.

§ 2703(d)[1] to require the Service Providers to disclose the items described in Part II of Attachment A, which are "record[s] or other information pertaining to a subscriber to or customer of such service." 18 U.S.C. § 2703(c)(1).

2.  This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3.  A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that … the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Attachment A are relevant and material to an ongoing criminal investigation.

---

1 This application seeks the disclosure of information about all phones that utilized one or more identified cell phone towers during a given timeframe, otherwise known as "tower dump" information. In *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Supreme Court held that the acquisition of historical cell-site location information for a period of seven days or more relating to a particular, identified cell phone required a warrant, *id.* at 2217 n.3; however, the Court expressly declined to reach the question of whether the acquisition of tower dump information constituted a Fourth Amendment search that required a warrant, *id.* at 2220. A tower dump reveals a phone's location only during a limited time and only then if it is in a specific location serviced by the cell tower(s) identified by the government. Unlike the historical cell-site location information for a particular phone at issue in *Carpenter*, tower dump information does not provide a record of a phone's location over multiple days and thus does not provide the sort of "all-encompassing record of the holder's whereabouts" that can provide an "intimate window into a person's life" that concerned the Court in *Carpenter*. *See id.* at 2217. Because tower dump information is qualitatively different from the historical cell-site location information for a particular phone at issue in *Carpenter*, the government respectfully submits that its acquisition is not a Fourth Amendment search and can be accomplished via the proposed 2703(d) order.

**FACTS ABOUT THE ONGOING CRIMINAL INVESTIGATION**

4. The United States is investigating a series of 32 commercial armed robberies in the Greater Boston area from July 2020 to January 2021. Investigators have reason to believe that these various armed robberies are related based on video surveillance images from the robberies, law enforcement interviews, physical surveillance of suspects, and public social media posts, among other things. The investigation concerns possible violations of 18 U.S.C. § 1951 (the Hobbs Act), among other potential statutes.

5. A summary description of each of the armed robberies follows, including the date, time, and location of each robbery; these descriptions are summary in nature and do not include all facts known to law enforcement:

   a. On July 25, 2020, at approximately 1:03 a.m., two male suspects wearing masks entered the Great Wok Restaurant located at 1284 Massachusetts Ave., Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained an unknown amount of money during the robbery. One of the suspects discharged the firearm during the robbery.

   b. On August 11, 2020, at approximately 12:55 a.m., two male suspects wearing masks entered the Great Wok Restaurant located at 1284 Massachusetts Ave., Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1200 during the robbery. One of the suspects discharged the firearm during the robbery.

c.  On August 21, 2020, at approximately 9:30 p.m., two male suspects wearing masks entered Best Liquor Store located at 1088 Dorchester Avenue, Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects were refused money during the robbery.

d.  On August 21, 2020, at approximately 10:02 p.m., two male suspects wearing masks entered the 7-Eleven located at 411 Pleasant Street, Brockton, MA. The suspects implied the use of a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $100 and cigarettes during the robbery.

e.  On August 21, 2020, at approximately 10:24 p.m., two male suspects wearing masks entered Garcia Grocery Store located at 886 Main Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $500 during the robbery.

f.  On September 22, 2020, at approximately 8:06 p.m., one male suspect wearing a mask entered the 7-Eleven located at 187 East Cottage Street, Boston, MA. The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained an unknown amount of money during the robbery.

g.  On September 23, 2020, at approximately 9:08 p.m., one male suspect wearing a mask entered Cappy's Convenience Store located at 949 Dorchester Ave., Boston, MA. The suspect brandished a firearm, approached the victim clerk, and made a

verbal demand for money. The suspect unlawfully obtained approximately $1000 during the robbery.

h. On September 23, 2020, at approximately 11:26 p.m., one male suspect wearing a mask entered Jones Hill Convenience Store located at 20 Hancock St., Boston, MA. The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained approximately $400 to $500 during the robbery.

i. On September 28, 2020, at approximately 9:24 p.m., two male suspects wearing masks entered the 7-Eleven located at 304 Belmont Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained approximately $600 to $700 during the robbery.

j. On September 28, 2020, at approximately 9:40 p.m., two male suspects wearing masks entered the Mobil Gas Station Convenience Store located at 761 Warren Avenue, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1000 during the robbery.

k. On September 28, 2020, at approximately 10:16 p.m., two male suspects wearing masks entered Quincy Variety Store located at 236 Quincy Street, Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1000 during the robbery.

l. On September 30, 2020, at approximately 9:00 p.m., two male suspects wearing masks entered Ashmont Market located at 630 Adams Street, Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained an unknown amount of money during the robbery.

m. On October 4, 2020, at approximately 7:58 p.m., two male suspects wearing masks entered Richdale Convenience Store located at 1395 North Main Street, Randolph, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $2,800 during the robbery.

n. On October 4, 2020, at approximately 9:23 p.m., two male suspects wearing masks entered Sam's Food Store located at 390 Pleasant Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $300 during the robbery.

o. On October 4, 2020, at approximately 10:04 p.m., two male suspects wearing masks entered the 7-Eleven located at 678 Adams Street, Quincy, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained an unknown amount of money during the robbery.

p. On October 6, 2020, at approximately 9:30 p.m., two male suspects wearing masks entered Brooklawn Liquors located at 496 Ashley Boulevard, New Bedford, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal

demand for money. The suspects unlawfully obtained approximately $2,500 and two bottles of liquor during the robbery.

q. On October 6, 2020, at approximately 10:43 p.m., two male suspects wearing masks entered H&B Gas and Convenience Store located at 178 Robeson Street, Fall River, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained an unknown amount of money during the robbery.

r. On October 7, 2020, at approximately 9:28 p.m., two male suspects wearing masks entered SAAB Food Mart located at 1260 Main Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $700 during the robbery. After the robbery, a witness chased and engaged in an altercation with the two suspects and a suspect discharged a firearm.

s. On October 7, 2020, at approximately 10:00 p.m., two male suspects wearing masks entered Petro Save Gas Station located at 64 N. Montello Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $200 during the robbery.

t. On October 7, 2020, at approximately 10:39 p.m., one male suspect wearing a mask entered Mini Central Convenience Store located at 140 Harvard Street, Boston, MA. The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained approximately $400 to $500 during the robbery.

u. On October 7, 2020, at approximately 11:00 p.m., two male suspects wearing masks entered Maria's Market located at 1760 Dorchester Avenue, Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $800 to $1200 and cigars during the robbery.

v. On October 9, 2020, at approximately 7:52 p.m., two male suspects wearing masks entered the 7-Eleven located at 443 Crescent Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained an unknown amount of money during the robbery.

w. On October 9, 2020, at approximately 9:48 p.m., two male suspects wearing masks entered Central Convenience Store located at 218 Blue Hill Avenue, Boston, MA, brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1000 during the robbery.

x. On November 23, 2020, at approximately 9:43 p.m., one male suspect wearing a mask entered A One Express located at 500 Pleasant Street, Brockton, MA. The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained approximately $1000 during the robbery.

y. On November 23, 2020, at approximately 10:15 p.m., one male suspect wearing a mask entered the 7-Eleven located at 76 Franklin Street, Quincy, MA. The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspect unlawfully obtained approximately $1000 during the robbery.

z. On December 16, 2020, at approximately 8:09 p.m., three male suspects wearing masks entered Shawmut Package Store located at 558 Shawmut Avenue, New Bedford, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1,650 during the robbery.

aa. On December 18, 2020, at approximately 9:00 p.m., two male suspects wearing masks entered Stoney Brook Wine and Spirits located at 80 Boylston Street, Boston, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $5,200 during the robbery.

bb. On December 21, 2020, at approximately 8:41 p.m., two male suspects wearing masks entered Brockton Liquors, 385 North Main Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1,135 during the robbery.

cc. On December 21, 2020, at approximately 9:14 p.m., two male suspects wearing masks entered Salto's Liquor Store located at 1041 North Main Street, Brockton, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money. The suspects unlawfully obtained approximately $1,135 during the robbery.

dd. On January 4, 2021, at approximately 7:29 p.m., two male suspects wearing masks entered Maria's Mini Mart located at 208 Chestnut Street, Randolph, MA. The suspects brandished a firearm, approached the victim clerk, and made a verbal

    demand for money.  The suspects unlawfully obtained approximately $3,000 during the robbery.

  ee. On January 9, 2021, at approximately 7:17 p.m., one male suspect wearing a mask entered Scott's Fine Wine and Spirits located at 669 Washington St., Easton, MA.  The suspect brandished a firearm, approached the victim clerk, and made a verbal demand for money.  The suspect unlawfully obtained an unknown amount of money during the robbery.

  ff. On January 9, 2021, at approximately 9:15 p.m., two male suspects wearing masks entered the Mobil Gas Station Convenience Store located at 761 Warren Avenue, Brockton, MA.  The suspects brandished a firearm, approached the victim clerk, and made a verbal demand for money.  The suspects unlawfully obtained approximately $400 during the robbery.

### FACTS ABOUT CELL TOWERS IN GENERAL

6. Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity.  By communicating with a cell tower, a wireless device can transmit or receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

7. Cellular phones are assigned unique telephone numbers.  In addition, all cellular devices are identified by one or more unique identifiers.  Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number

("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

8. Cellular providers routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include (1) the telephone call number and unique identifiers for the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.,* face of tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication. In general, cellular providers have the ability to query the historical records described above to determine the cellular device(s) that were connected to a particular cellular tower on their network during a given period of time and to produce such information to the government.

9. Based on the above facts, there is reason to believe that the records described in Attachment A would identify which wireless devices connected to, and thus were in the general vicinity of, the 32 commercial armed robberies described above. This information, in turn, will assist law enforcement in determining which persons were present for the armed robberies.

## REQUEST FOR ORDER

10. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States

to identify and locate the individual(s) who are responsible for the events described above and to determine the nature and scope of their activities, as well as to identify and locate witnesses. Accordingly, the United States requests that the Service Providers be directed to produce all items described in Part II of Attachment A to the proposed Order.

11. The United States further requests that the Order require the Service Providers not to notify any person, including individuals whose wireless devices connected to the cellular telephone towers described in Part I of Attachment A, of the existence of the Order for one year from the date of the Court's order, or until notified by the government within thirty days of the conclusion of the investigation, whichever is earlier. *See* 18 U.S.C. § 2705(b). Such a requirement is justified because the Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal devices.

12. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

                              Respectfully submitted,

                              NATHANIEL R. MENDELL
                              ACTING UNITED STATES ATTORNEY

                    By:    */s/ Charles Dell'Anno*
                            Charles Dell'Anno
                            Assistant United States Attorney

Dated: March 1, 2021